**The document below is hereby signed.**

**Dated: August 16, 2012.**



**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                        )
                             )
RAYMOND WISE, JR.,           )        Case No. 12-00262
                             )        (Chapter 13)
            Debtor.          )        For publication in West's
                             )        Bankruptcy Reporter.

MEMORANDUM DECISION RE DEBTOR'S SECOND AMENDED PLAN

The debtor, Raymond Wise, Jr. has filed a second amended

plan.  The trustee has objected to confirmation of the plan.

Wise calculated that over the plan's applicable commitment period

of 36 months, "projected disposable income," as that term is used

in 11 U.S.C. § 1325(b)(1)(B), and amounts necessary to effectuate

a cure of the prepetition arrears he owes Wells Fargo Bank, N.A.

on his home mortgage would total $11,988.  Wise proposes in the

plan to pay that $11,988 amount via paying the trustee $333 per

month for 36 months.  The court will confirm the plan with a

modification of the timing of the payment of the $11,988 (in

order to effectuate a cure within a reasonable time of the

prepetition arrears owed on Wells Fargo's prepetition arrears

claim that is secured by a mortgage on Wise's principal

residence).

I

The chapter 13 trustee has objected to confirmation of the plan, first, by invoking 11 U.S.C. § 1325(b)(1).[1] By reason of the trustee having invoked § 1325(b)(1), the plan, which does not call for unsecured claims to be paid in full, cannot be confirmed "unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment . . . will be applied to make payments to unsecured creditors under the plan." Specifically, the trustee contends that Wise's calculation that "projected disposable income" is $11,988, less amounts necessary to cure his prepetition mortgage arrears, must be adjusted in two

---

[1] Section 1325(b)(1) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

2

ways:

>     (1) Wise's Social Security income of $366 per month
> must be included as income, and

>     (2) the amounts required to accomplish a cure of Wells
> Fargo's prepetition arrears claim under the plan must not be
> included as an expense.

Part III of this decision overrules that objection.

The chapter 13 trustee has also objected that the plan does not comply with 11 U.S.C. § 1322(b)(5) because the cure of Wells Fargo's prepetition arrears claim would not be made within "a reasonable time."  In response, Wise has agreed to modify the plan to accelerate the payment of his "projected disposable income" of $11,988 by increasing payments to $699 per month for the first 15 months of the plan, which will suffice to pay the Wells Fargo arrears claim in full,[2] with the balance of the $11,988 to be paid via payments of $71.58 per month for the duration of the 36-month plan.  That modification provides for a cure of Wells Fargo's prepetition arrears claim within a reasonable time as required by § 1322(b)(5).  The modification also benefits unsecured creditors because it necessarily results in the amounts that will be paid to them being paid sooner.

---

[2]  There are no anticipated administrative or priority claims that would delay payment of Wells Fargo's arrears claim. Wise's attorney's fee of $2,000.00 for the work he has performed was paid prepetition.  Wise scheduled no claims entitled to priority under 11 U.S.C. § 507.

Nevertheless, Wise's modification of his plan presents an additional § 1325(b)(1)(B) issue. The trustee objected at the confirmation hearing that if Wise is correct in his calculation that, before curing the prepetition mortgage arrears, he has projected disposable income of $333 per month, then after paying $699 per month for the first 15 months of the plan to wipe out the prepetition mortgage arrears, Wise would then have $333 in monthly disposable income. Accordingly, she argues, Wise is required by § 1325(b)(1)(B) to pay $333 for the remaining 21 months of the plan. Part IV of this decision overrules that objection.

The trustee raises one other objection beyond her objections based on § 1325(b)(1)(B). She objects that 11 U.S.C. § 1325(a)(3) imposes a separate requirement that a plan be proposed in good faith, and that because Wise has an ability, by reason of his Social Security income, to pay more in plan payments than the $11,988 he is proposing, the plan is not proposed in good faith. Part V of this decision overrules that objection.

II

The parties are in agreement that if, in calculating projected disposable income over the life of the plan:

> (1) Wise's Social Security income is excluded as income, and

4

(2) the amounts needed to cure Wise's prepetition

mortgage arrears debt to Wells Fargo (plus the 10% trustee

commission thereon) were not included as deductions against

income,

then Wise's projected disposable income would be, on average,

$333 per month, resulting in $11,988 in projected disposable

income over the life of the plan.

The plan calls for the trustee to use the $11,988 in plan

payments to cure the $9,147.29 in prepetition arrears owed to

Wells Fargo, with the cure payments to not include postpetition

interest on the arrears, and to use the remainder to pay

unsecured claims.  With the trustee receiving a commission of

10%, that would leave only $1,925.98 in plan payments after

satisfying Wells Fargo's prepetition arrears claim.[3]  Wise

contends that his projected disposable income amounts to that

$1,925.98 because he is allowed to deduct the amounts necessary

to effectuate his prepetition mortgage arrears cure in

calculating projected disposable income.  That $1,925.98 will

fall far short of paying allowed unsecured claims in full.

III

The trustee raises two objections regarding Wise's

calculation of "projected disposable income."  Neither is a sound

---

[3]  The payments to Wells Fargo of $9,147.29 plus a 10%
trustee commission would equal $10,062.02, reducing the
$11,988.00 in plan payments to $1,925.98.

objection.

A

First, the trustee contends that Wise's Social Security
income of $366 per month must be included in calculating
"projected disposable income" to be received in the 36-month
commitment period.  The trustee concedes that the term
"disposable income" does not include Social Security income.  The
term "disposable income" means "current monthly income received
by the debtor" less amounts "reasonably necessary to be expended"
for, among other things, the debtor's maintenance and support.[4]

---

[4]  In full, 11 U.S.C. § 1325(b)(2) provides:

For purposes of this subsection, the term "disposable
income" means current monthly income received by the
debtor (other than child support payments, foster care
payments, or disability payments for a dependent child
made in accordance with applicable nonbankruptcy law to
the extent reasonably necessary to be expended for such
child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the
debtor or a dependent of the debtor, or for a
domestic support obligation, that first becomes
payable after the date the petition is filed; and

(ii) for charitable contributions (that
meet the definition of "charitable contribution"
under section 548(d)(3)) to a qualified religious
or charitable entity or organization (as defined in
section 548(d)(4)) in an amount not to exceed 15
percent of gross income of the debtor for the year
in which the contributions are made; and

(B) if the debtor is engaged in business, for
the payment of expenditures necessary for the
continuation, preservation, and operation of such
business.

In turn, § 101(10A) defines "current monthly income" as average monthly income the debtor receives over a specified six-month look-back period but excludes "benefits received under the Social Security Act" (and excludes certain other income of no relevance here).[5]

---

[5] Section 101(10A) provides:

The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

7

The term "projected disposable income" is not defined, but
*Hamilton v. Lanning*, --- U.S. ---, 130 S. Ct. 2464, 2478, 177
L.Ed.2d 23, --- (2010), held that "when a bankruptcy court
calculates a debtor's projected disposable income, the court may
account for changes in the debtor's income or expenses that are
known or virtually certain at the time of confirmation."  In
other words, when there are known changes that will occur in a
debtor's income, "projected disposable income" is not calculated
using income in the six-month look-back period specified in the
§ 101(10A)(A) definition of "current monthly income" and the
changed income may be utilized in arriving at a projection of
"disposable income" in order to determine "projected disposable
income."[6]

When a debtor has no "known or virtually certain" changes in
her income or expenses, the income side of her "disposable
income" is based on "current monthly income," an average monthly
amount which, by reason of the definition of that term, excludes
Social Security income, and when she projects that "disposable
income," it necessarily does not include Social Security income.
When a debtor has "known or virtually certain" changes in income
that *Hamilton v. Lanning* permits a court to take into account in

---

[6]   Similarly, when there are known changes that will occur
in a debtor's expenses, those changed expense amounts may be
utilized in arriving at a projection of "disposable income" in
order to determine "projected disposable income."

projecting "disposable income," the projection still must exclude types of income excluded from the definition of "disposable income" and, thus, "projected disposable income" never includes Social Security income. *Hamilton v. Lanning* viewed the word "projected" as permitting courts, in projecting "disposable income," to not restrict income to the six-month look-back period specified by § 101(10A) when changes in income are known or virtually certain at the time of confirmation, but it did not unmoor the projection of "disposable income" from that term's definition (which incorporates the income exclusions of § 101(10A)). Accordingly, Social Security income, which is one of the income exclusions in § 101(10A), must always be excluded in projecting "disposable income" to arrive at "projected disposable income." *See Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011).[7]

That the debtor in *Baud v. Carroll* had current monthly income above the comparable median family income does not make its holding inapplicable to a below median family income debtor

---

[7] *But see In re Nicholas,* 458 B.R. 516 (Bankr. E.D. Ark. 2011); *In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010), *rev'd sub nom. Cranmer v. Anderson*, 463 B.R. 548 (D. Utah 2011), appeal pending *sub nom. Anderson v. Cranmer*, Case No. 12-4002 (10th Cir.); *In re Rodgers*, 430 B.R. 910, 913-14 (Bankr. M.D. Fla. 2010). In *Vandenbosch v. Waage (In re Vandenbosch)*, 459 B.R. 140, 143 (M.D. Fla. 2011), the district court concluded that *In re Rodgers* was wrongly decided.

9

(like Wise) who has current monthly income well below the
comparable median family income.  For both types of debtors,
§ 1325(b)(2) commands that "disposable income" means "current
monthly income" (excluding certain child payments of no relevance
to the analysis of the instant issue) less certain expenses.  For
both types of debtors, amounts received as Social Security
benefits must be excluded as *income* in calculating "disposable
income."  Whether the debtor has "current monthly income" above
or below the comparable median family income matters for only two
purposes, neither of which affects the items of *income* to be
excluded in calculating "disposable income":

- First, for certain debtors with "current monthly income"
  above the comparable median family income, 11 U.S.C.
  § 1325(b)(3) provides that in calculating "amounts
  reasonably necessary to be expended" under § 1325(b)(2) in
  determining "disposable income," such *expenses* "shall be
  determined in accordance with subparagraphs (A) and (B) of

section 707(b)(2)."[8]

- Second, the "applicable commitment period" referred to

  in § 1325(b)(1)(B) is determined under 11 U.S.C.

  § 1325(b)(4), and that provision looks to whether the

  debtor has "current monthly income" above the

  comparable median family income in making that

---

[8]   Section 1325(b)(3) provides:

Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4.

determination.[9]

Accordingly, the holding in *Baud v. Carroll*, that Social Security income is excluded in determining "projected disposable income," applies here even though Wise was a below median family income debtor.

---

[9]    Section 1325(b)(4) provides:

For purposes of this subsection, the "applicable commitment period"—

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

12

This is borne out by Form 22C.  For both a debtor with "current monthly income" above the median family income and a debtor with "current monthly income" below the median family income, a debtor's Form 22C lists on line 20 the debtor's current monthly income, and line 9 of Form 22C expressly excludes Social Security income from that current monthly income figure.

The trustee nevertheless argues that Schedules I and J evidence that Social Security income ought to be included in determining "projected disposable income."  She notes that a debtor's Schedule I (*Current Income of Individual Debtor(s)*) includes Social Security income as an item of income, and that with Schedule J (*Current Expenditures of Individual Debtor(s)*) it results in a calculation of "current monthly net income" (reflected on Line 20(c) of Schedule J).  The reason Schedule I and J include Social Security income in calculating "monthly net income" is obvious: such "monthly net income" is pertinent to whether the plan is feasible.  Such "monthly net income" ought not be viewed as the same thing as the statutorily defined term "projected disposable income."

A debtor's Schedule I may more accurately reflect what a debtor's future income truly will be than does Form 22C, which is limited to income in the six-month look-back period, and, in that sense, under *Hamilton v. Lanning*, Schedule I sometimes is a sounder basis for projecting disposable income than is the income

13

received in the six-month look-back period of § 101(10A)(A).
Nevertheless, Schedule I does not purport to address what income
is to be excluded in calculating "projected disposable income."
That bankruptcy courts rely heavily on Schedule I in determining
a debtor's true future disposable income for purposes of
"projected disposable income" does not demonstrate that it is
appropriate to include Social Security income stated on the
Schedule I in calculating "projected disposable income."  The
"monthly net income" stated on Line 20(c) of Schedule J would be
labeled "projected disposable income" if that was the purpose of
Schedules I and J.

     The trustee raises two other points.  She notes that an
important purpose of the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, 119 Stat. 23 (BAPCPA), was to require a
debtor to repay his debts based on the debtor's ability to repay.
*See Ransom v. FIA Card Servs., N.A.*, --- U.S. ---, 131 S. Ct.
716, 178 L. Ed. 2d 603 (2011); *Baud v. Carroll*, 634 F.3d at 343
(quoting pertinent passages of *Ransom* on this point).  In
addition, she notes that prior to BAPCPA, courts often included
Social Security income included on Schedule I in the calculation
of disposable income.  Neither point warrants including Social
Security income in "projected disposable income."  The Court of
Appeals for the Sixth Circuit soundly observed:

     we see a "clear indication that Congress intended ... a
     departure" from any such pre-BAPCPA practice, *Lanning*,

14

> 130 S.Ct. at 2473, in the combined effect of BAPCPA's (1)
> defining current monthly income to expressly exclude
> benefits received under the Social Security Act and (2)
> amending the definition of disposable income to
> incorporate the definition of current monthly income.
> And this clear indication by Congress that Social
> Security benefits are to be treated differently
> post-BAPCPA must override BAPCPA's purpose of ensuring
> that debtors "repay creditors the maximum they can
> afford," *Ransom*, 131 S.Ct. at 725 (internal quotation
> marks omitted), because any application of that purpose
> must be "consistent with the statutory text[.]" *Id.*

*Baud v. Carroll*, 634 F.3d at 347.  *See also In re Vandenbosch*,

459 B.R. at 143.

For all of these reasons, Social Security income must be

excluded in calculating disposable income, and thus in

calculating projected disposable income.

B

The trustee further argues that the amounts required to

accomplish a cure of Wells Fargo's prepetition arrears claim

under the plan must not be included as an expense in calculating

Wise's "projected disposable income."  In calculating "disposable

income," § 1325(b)(2) allows a reduction of income by "amounts

reasonably necessary to be expended":

> (A)(i) for the maintenance or support of the debtor or a
> dependent of the debtor, or for a domestic support obligation,
> that first becomes payable after the date the petition is
> filed[.]

For reasons explained below, Wise's payments into the plan to

accomplish a cure of his prepetition home mortgage arrears

qualify as such allowable reductions in calculating projected

disposable income.

1

The trustee does not contend that Wise's curing his home
mortgage prepetition arrears is not reasonably necessary to be
expended for his maintenance or support.  If she had raised such
a contention, I would reject it.

Saving a home from foreclosure, by invoking the right under
11 U.S.C. § 1322(b)(5) to cure the existing arrears, is a prime
reason for debtors' seeking relief under chapter 13 of the
Bankruptcy Code.  Assuring that Wise keeps his home goes to his
"maintenance or support."  A failure to make a cure of the
default under § 1322(b)(5) could lead to a foreclosure sale
depriving him of his home.  Expending such amounts, to stave off
a foreclosure, is presumptively reasonably necessary for such
maintenance and support, and the trustee has not pointed to
anything in the record that suggests that the amounts are not
reasonably necessary for Wise's maintenance and support.  *Compare
In re Nicholas*, 458 B.R. at 517-18 (debtor lived alone in a 7,000
square foot home on 10 acres of land, well in excess of what she
needed).

Moreover, § 1325(b)(2) does not make amounts a debtor
expends for her maintenance or support *not* reasonably necessary
to the extent that the source for funding the expense is exempt
property or a form of income (such as Social Security benefits)

16

excluded from the definition of "current monthly income."  This
follows because fixing disposable income is a two-step process.
First, one calculates "current monthly income" without including
in that calculation certain forms of income such as Social
Security benefits.  Then, from the "current monthly income"
figure, one subtracts, among other things, amounts that are
reasonably necessary for the maintenance or support of the
debtor, without regard to the source of making such payments.

2

     The trustee argues, first, that the prepetition arrears
expense is not, within the meaning of § 1325(b)(2)(A)(i), "for
the maintenance or support of the debtor or a dependent of the
debtor, or for a domestic support obligation, **that first becomes
payable after the date the petition is filed**" (emphasis added)
because such an obligation is not one "that first [became]
payable after the date the petition is filed."  This argument
fails for two reasons.

     First, in the case of an above median family income debtor,
payment of a prepetition mortgage arrears is allowed in
calculating "disposable income" under § 1325(b)(2) if it is
necessary for the debtor to maintain possession of the debtor's
primary residence.  Therefore, even if a debt became payable
prepetition, its payment may be treated as a deduction under
§ 1325(b)(2)(A)(i) if reasonably necessary for the maintenance or

support of the debtor.  Explaining that observation requires a detour navigating interrelated provisions of the Bankruptcy Code.

Although it does not appear that the trustee contests the observation, for the sake of completeness here is how one arrives at it.  First, § 1325(b)(3)  provides that an expense allowable under 11 U.S.C. § 707(b)(2)(A) will be treated under § 1325(b)(2) as an expense "reasonably necessary to be expended," meaning that it is an expense reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed" for purposes of § 1325(b)(2)(A)(i).  In turn, § 707(b)(2)(A)(i) sets forth a test for determining whether a presumption of abuse exists in a chapter 7 case based on "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv)."  In turn, § 707(b)(2)(A)(iii) sets forth the following amounts as permitted reductions under § 707(b)(2)(A)(i):

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> > (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
> >
> > (II) **any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence**, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents,

18

that serves as collateral for secured debts;

divided by 60.

[Emphasis added].  Accordingly, for above median family income

debtors, an allowable expense in calculating projected disposable

income is any prepetition arrears owed to a secured creditor

necessary for the debtor, in filing a plan under chapter 13 of

this title, to maintain possession of the debtor's primary

residence that serves as collateral for the debt.  This

demonstrates that the payment of a debt that became payable

prepetition may be treated as a deduction under

§ 1325(b)(2)(A)(i) if reasonably necessary for the maintenance or

support of the debtor.  It follows that the limitation in the

ending clause of § 1325(b)(2)(A)(i) that an obligation must be

one "that first becomes payable after the date the petition is

filed" is a limitation on the immediately preceding clause

dealing with amounts expended "for a domestic support obligation"

and is *not* a limitation on the earlier clause dealing with

amounts expended "for the maintenance or support of the debtor or

a dependent of the debtor."

Second, the propriety of this conclusion is further made

evident by the contrasting treatment chapter 13 accords a

domestic support obligation depending on whether it first became

payable prepetition or postpetition.  In 11 U.S.C. § 1307(c)(11),

Congress listed as a cause for dismissal or conversion of a case

19

"failure of the debtor to pay any domestic support obligation
that first becomes payable after the date of the filing of the
petition." *See also* 11 U.S.C. § 1325(a)(8) (requiring, as a
condition for confirmation of a plan, that the debtor have paid
such domestic support obligations that first became payable
postpetition).   It is evident that Congress requires a chapter 13
debtor to remain current on any domestic support obligation that
first becomes payable postpetition.   Payment of such postpetition
domestic support obligations will necessarily reduce the amount
of income the debtor has to pay into the plan, and ought to be
counted as a deduction in computing projected disposable income.

In contrast, unless the holder of the claim agrees to a
different treatment, a prepetition support obligation must be
paid in full, via the trustee's paying the obligation out of the
debtor's plan payments as a claim entitled to priority under 11
U.S.C. § 507(a)(1).   *See* 11 U.S.C. § 1322(a)(2).   For a below
median family income debtor, "projected disposable income" is not
reduced by the amount of such a prepetition domestic support
obligation.   In turn, the claim for prepetition support
obligation is treated as one of the unsecured claims towards the
payment of which all of the debtor's projected disposable income
must be applied.

As an aside, it must be noted that the statute works
differently for an above median family income debtor.   In the

20

case of such a debtor, § 707(b)(2)(A)(iv) provides for the
priority claims owed by the debtor (including any prepetition
domestic support obligation) to be allowed as an expense in the
determination under § 707(b)(2)(A)(i) of whether abuse is
presumed to exist.  Accordingly, under § 1325(b)(3), the expense
of paying priority claims *does* count for such a debtor as a
subtraction in computing projected disposable income.  Thereby,
§ 707(b)(2)(A)(iv) overrides the limitation in § 1325(b)(2)(A)(i)
of only postpetition domestic support obligations being

deductible in calculating projected disposable income.[10]

Nevertheless, the point still remains that the most reasonable interpretation of § 1325(b)(2)(A)(i) is that the limitation that an obligation must be one "that first becomes payable after the date the petition is filed" only applies to domestic support obligations.  That § 707(b)(2)(A)(iv) undoes that limitation in the case of an above median family income debtor does not affect the limitation being restricted to

---

[10]   To avoid an absurd result, an above median family income debtor cannot both deduct a priority claim (such as a prepetition domestic support obligation) in calculating projected disposable income and then treat that claim's holder as one of the "unsecured creditors" to which such projected disposable income must be applied under § 1325(b)(1)(B). *See In re Grabarczyk, 2012 WL 909511, at *8 (Bankr. N.D. Ohio Mar. 14, 2012); Renteria v. Skelton (In re Renteria)*, 420 B.R. 526 (S.D. Cal. 2009); *In re Wilbur*, 344 B.R. 650 (Bankr. D. Utah 2006). *See also In re Johnson*, 408 B.R. 811 (Bankr. W.D. Mo. 2009); *In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008); *In re Echeman*, 378 B.R. 177 (Bankr. S.D. Ohio 2007); *In re Puetz*, 370 B.R. 386 (Bankr. D. Kan. 2007); *In re Amato*, 366 B.R. 348 (Bankr. D.N.J. 2007); *In re McDonald*, 361 B.R. 527 (Bankr. D. Mont. 2007).  By permitting an above median family income debtor to deduct the amount due to priority unsecured creditors, "[t]he purpose of the calculations . . . is, quite clearly, to reach an estimate of how much the debtor can afford to pay non-priority unsecured creditors." *In re Wilbur*, 344 B.R. at 654.  Accordingly, as stated in *In re Grabarczyk*, 2012 WL 909511, at *8 (Bankr. N.D. Ohio Mar. 14, 2012):

> the only reasonable interpretation of the term "unsecured creditors," as used in § 1325(b)(1)(B), is one that refers to all unsecured creditors for whose claims the debtor has not included an expense deduction in calculating disposable income.  Only if payments on an unsecured creditor's claim are not deducted as an expense in calculating projected disposable income may such claims be paid from projected disposable income.

domestic support obligations in the case of a below median family income debtor.  Accordingly, I reject the trustee's argument that the amounts necessary to be paid into the plan in order to cure Wise's prepetition home mortgage arrears are not deductible in computing projected disposable income.

3

The trustee argues, second, that the prepetition home mortgage arrears must not be included as a reduction in calculating disposable income because, with that claim being paid pursuant to the plan, that amounts to a double counting, citing *In re Renteria*, 420 B.R. at 530.  This misconstrues *In re Renteria* and the way the statute works.

If Wise had no prepetition home mortgage arrears to pay, his projected disposable income would be $11,988.00.  Wise, however, does have such an obligation, and § 1325(b)(2)(A)(i) permits him to deduct the $10,062.02 necessary to effect a cure of that arrears in calculating projected disposable income.[11]  *See In re Quarterman*, 342 B.R. 647, 652 (Bankr. M.D. Fla. 2006) (debtor may deduct payments debtor is proposing to make in plan on secured claims); *In re Rush*, 387 B.R. 26, 32-33 (Bankr. W.D. Mo. 2008). That $10,062.02 expense reduces projected disposable income to $1,925.98, and Wise's plan contemplates that the $1,925.98 in

---

[11]  As noted previously, the payments to Wells Fargo of $9,147.29 plus a 10% trustee commission would equal $10,062.02.

23

projected disposable income "will be applied to make payments to
unsecured creditors under the plan" as required by
§ 1325(b)(1)(B).  There is no double counting.

In contrast, in *In re Renteria*, the debtor's projected
disposable income included a reduction for payment of priority
tax claims, as is authorized for an above median family income
debtor by §§ 707(b)(2)(A)(iv) and 1325(b)(3), yet the debtor's
plan proposed to use that projected disposable income to make
payment of the same priority tax claims.  This amounted to double
counting, and the courts have uniformly interpreted the statute
as barring such double counting.  *See* n.10, *supra*.

During the early months of the plan, as it is being
modified, there is no projected disposable income because Wise is
incurring the necessary expense of curing the Wells Fargo
mortgage arrears claim within a reasonable time as required by
§ 1322(b)(5), but once that claim has been fully paid all of the
plan payments, equaling Wise's projected disposable income, are
intended for the benefit of unsecured creditors.  Accordingly,
Wise is complying with § 1325(b)(1)(B).

IV

The trustee argues that if, after first curing the
prepetition mortgage arrears under the modification of his plan,
Wise has projected *monthly* disposable income of $333 per month,
then after paying $699 per month for the first 15 months of the

24

plan, Wise would be required by § 1325(b)(1)(B) to pay that projected *monthly* disposable income of $333 for the remaining 21 months of the plan.  This argument fails because § 1325(b)(1)(B) only requires that a debtor pay into a plan his projected disposable income "to be received in the applicable commitment period beginning on the date that the first payment is due under the plan."  The calculations relating to projected disposable income simply determine a *total amount* that a debtor's plan must commit will be applied to make payments to unsecured creditors. *See McCarty v. Lasowski (In re Lasowski)*, 575 F.3d 815, 820 (8th Cir. 2009).  As part III(A) of this decision demonstrates, the computation of projected disposable income is based on, first, including in projected income items of projected income that § 101(10A)(A) includes in current monthly income.  Then, as part III(B) of this decision demonstrates, such projected income is reduced by expenses incurred in the commitment period that § 1325(b)(2) allows to be used as reductions to finally arrive at a projected disposable income.  This results in an aggregate amount.  In this case, the total amount of projected disposable income is $1,925.98, and Wise's plan, as modified, will commit precisely that amount towards payment of his unsecured creditors.

Consider a business debtor who it is known will incur heavier expenses in certain months of his plan, resulting in a negative projected disposable income in those months.  Those

negative amounts ought to be offset against positive projected

disposable income to be received in other months to arrive at a

total projected disposable income over the life of the plan.  The

months in which there is positive disposable income should not be

the only months taken into account in computing the aggregate

projected disposable income figure.  Similarly here, Wise will

have negative disposable income in the first 15 months of his

modified plan, and will have positive disposable income in the

last 21 months, and the negative amounts must be set off against

the positive amounts in arriving at an aggregate amount of

projected disposable income.

Nevertheless, projected monthly variations in income or

expenses are allowed to be taken into account in determining

*when*, over the life of the plan, a debtor's aggregate projected

disposable income must be paid.  In *In re Lasowski*, 575 F.3d at

820, the debtor's 401(k) loan repayments were a permissible

expense to be subtracted in calculating projected disposable

income, but those loan repayments would be concluded before the

end of her applicable commitment period.  The court of appeals

noted that the debtor was free not to pay projected disposable

income to unsecured creditors in the early months of her plan to

the extent that the 401(k) loan payments prevented her from doing

so, and could propose a tiered plan that paid the aggregate

amount representing projected disposable income to unsecured

26

creditors by increasing her plan payments *after* the 401(k) payments had ceased.

This case is no different. Wise is required to pay off his mortgage arrears in the first 15 months of the plan in order to make a cure within a reasonable time under § 1322(b)(5), and he will be unable to devote any plan payments towards the payment of his unsecured creditors until the mortgage arrears is paid. But once he has paid the mortgage arrears, his modified plan provides for payments to the trustee for distribution to unsecured creditors in an amount equaling his projected disposable income of $1,925.98. This complies with § 1325(b)(1).

When at the early stages of a plan, as in the case of Wise's modified plan, a debtor's projected income (calculated without including Social Security income) is exceeded by his allowable expenses (including a cure of prepetition home mortgage arrears), this results in a negative monthly disposable income. Here, Wise will be able to make the $699 plan payment for the first 15 months of the plan when his projected monthly disposable income is negative only because he can dip into his Social Security income which is not included in projected disposable income. Once he cures the mortgage arrears, he will have fairly large positive monthly disposable income later. Nevertheless, the negative figures in the early months are a setoff against the positive figures in the later months.

27

The aggregate amount of projected disposable income Wise is required to have his plan commit towards payment of unsecured creditors, $1,925.98, remains the same whether Wise makes plan payments at a constant amount of $333 per month (as proposed by his second amended plan) or, instead, modifies his plan to provide for plan payments of $699 for 15 months (in order to cure the mortgage arrears in a reasonable time as required by § 1322(b)(5)) and then $71.58 for the remaining 21 months.[12] Accordingly, I reject the trustee's argument that Wise must pay more than $71.58 in the last 21 months of the modified plan he proposes, that is, her contention that Wise must pay $333 per month in the last 21 months of the plan.

V

Finally, the trustee contends that Wise's failure to devote his Social Security income towards paying unsecured claims requires a finding that he has not proposed his plan in good faith as required by § 1325(a)(3).  That argument must be

---

[12]   Wise could elect to pay the $1,925.98 sooner.  Nothing precludes a debtor from paying her currently projected disposable income earlier than the last month of the applicable commitment period.  Nevertheless, such a debtor may be required to keep the plan open for the full commitment period in order to take into account any changes occurring in that period that could warrant a modification of the plan in favor of creditors.  *See Baud v. Carroll*, 634 F.3d at 338-344 (the plan of a debtor with positive projected disposable income must last for the applicable commitment period) and 350-57 (even when the projected disposable income is zero or a negative figure, the debtor's plan must last for the applicable commitment period).

rejected.

A debtor need not commit a specific amount of funding or pay a minimum percentage of his unsecured debt to propose a plan in good faith, and in determining whether a plan was proposed in good faith, a court must adhere to "the traditional meaning of 'good faith' as honesty of intention." *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 200 (D.C. Cir. 1982).  Moreover, as I observed in *In re Briscoe*, 374 B.R. 1, 22 (Bankr. D.D.C. 2007), "[o]nly those debtors engaging in subterfuge so blatant as to indicate that they have 'unfairly manipulated the Bankruptcy Code, or otherwise proposed [their] [c]hapter 13 plan in an inequitable manner,' *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982), will run afoul of § 1325(a)(3)."

This leads me to conclude that the debtor's plan, as it is to be modified, is not proposed in bad faith.  Although the courts are split on the issue, I agree with *Drummond v. Welsh (In re Welsh),* 465 B.R. 843 (B.A.P. 9th Cir. 2012), that:

> If, in proposing a plan, the debtor has misrepresented facts, unfairly manipulated the Code, or engaged in egregious behavior, a court may find that the plan was not proposed in good faith.  That finding may not, however, be based on the mere fact that the debtor has excluded income or deducted expenses that the Code allows.

465 B.R. at 854-55 (footnote omitted).  Specifically:

> [T]he fact that a debtor excludes income from the disposable income calculation that Congress specifically allows the debtor to exclude is not, by itself, probative of a lack of good faith. We reject  the reasoning of the

29

> cases that say that, because Social Security payments are
> intended to provide for a recipient's basic needs, a
> debtor must use the benefit payments to provide for those
> basic needs, thereby freeing up other, non-exempt income,
> for plan payments. *E.g., In re Hall*, 442 B.R. 754
> (Bankr. D. Idaho 2010). This approach simply does by
> indirection what the Code says cannot be done, which is
> to include Social Security benefit payments in a debtor's
> disposable income calculation.

*Id.* at 856.[13]

The trustee does not point to anything other than Wise's

ability, via his Social Security income, to pay more than he is

proposing to pay.[14] As to Wise's expenses, she does not assert

that Wise ran up his prepetition mortgage arrears in an attempt

to exclude the income used for curing those arrears from payments

under the plan committed towards paying unsecured creditors.

Wise is simply doing what §§ 1322 and 1325 permit him to do, and

---

[13] The same issue is pending in the appellate cases of
*Beaulieu v. Ragos (In re Ragos)*, Case No. 11-31046 (5th Cir.),
and *Anderson v. Cranmer*, Case No. 12-4002 (10th Cir.)

[14] This is not a case like *In re Herrmann*, 2011 WL 576753
(Bankr. D.S.C. Feb. 9, 2011), a joint case in which the court
found bad faith. In that case, one of the debtors failed to
disclose his Social Security income. Under the joint plan, he
retained the entire amount of his Social Security income by
having his wife, who was not receiving Social Security income,
devote her income towards paying all household expenses even
though the spouses' estates were separate estates, thereby
avoiding any meaningful payment to unsecured creditors.

By reason of the disregard of the separateness of the
estates in how § 101(10A)(A) defines current monthly income for
spouses in a joint case, such a plan arguably might comply with
the projected disposable income requirement of § 1325(b)(1)(B).
I need not address whether, if such a plan does comply with
§ 1325(b)(1)(B), then the plan, under the controlling law in this
circuit, could be found to have been proposed in bad faith.

§ 1325(b)(1), with which Wise's modified plan will comply,
governs what a debtor must pay in order to make a meaningful
distribution to unsecured creditors.

That Wise's plan, as modified, will call for plan payments
of $699 per month during the first 15 months and will drop to
$71.58 in the last 21 months of the plan (when plan payments will
be committed towards paying unsecured creditors) does not
demonstrate bad faith.  Indeed, it will result in unsecured
creditors being paid more quickly than under the second amended
plan's provision for constant payments of $333 per month.

That modification was necessitated because the trustee
objected that the mortgage arrears would not be cured within a
reasonable time, as required by § 1322(b)(5), if Wise made
constant plan payments of only $333 per month.  In other words,
Wise is paying $699 per month for the first 15 months, via
devoting his Social Security income towards making those
payments, because he is being forced by § 1322(b)(5) to do so.
Nevertheless, the mortgage arrears is a permissible expense in
determining projected disposable income.  On the income side, the
Social Security income he devotes towards plan payments in the
first 15 months of the plan is specifically excluded from
projected disposable income.  By reducing plan payments to $71.58
per month for the last 21 months of the plan, Wise is simply
replenishing the Social Security income, excluded from projected

31

disposable income, that he was forced to use for a permissible
expense during the first 15 months of the plan.  A ruling that
this is bad faith would amount to a circumvention of the
requirement that projected disposable income exclude Social
Security income.

As in *In re Barnes*, 689 F.2d 200, Wise's proposed modified
plan reflects an honesty of intention, and there is no suggestion
that Wise "has engaged in any specific misconduct, did not intend
to carry out the plan, proposed the plan for an improper purpose,
or did anything else to bring either case within the ambit of bad
faith as traditionally interpreted."

VI

I will thus confirm Wise's second amended plan, with the
modification that the plan payments of $11,988 will now be paid
on an accelerated basis of $699 per month for the first 15 months
of the plan and then at $71.58 for the remaining 21 months of the
plan, a modification that benefits both Wells Fargo as a secured
creditor and the unsecured creditors.  Pursuant to the trustee's
request and the debtor's consent, I will delay entry of a
confirmation order until August 29, 2012.

[Signed and dated above.]

Copies to: Recipients of e-notification.